# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**LUKE W. GORBY,**

      **Plaintiff,**

   v.                                      **Civil Action 2:16-cv-656**
                                                    **Judge Michael H. Watson**
                                                    **Magistrate Judge Jolson**

**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Luke W. Gorby, brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income ("SSI"). For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

**I. BACKGROUND**

    **A. Procedural History**

Plaintiff applied for SSI on February 26, 2013, alleging disability beginning December 15, 2012 at the age of twenty three, due to numerous physical and mental impairments. (Tr. 420 at PAGEID #: 466). His application was denied initially on May 13, 2013, and upon reconsideration on June 28, 2013. (Tr. 225, PAGEID #: 298). Administrative Law Judge Irma J. Flottman (the "ALJ") held a hearing on September 16, 2014, after which she denied benefits in a written decision on November 13, 2014. (*Id*.). That decision became final when the

Appeals Council denied review on May 9, 2016. (Tr. 1, PAGEID #: 44).

Plaintiff filed this case on July 6, 2016 (Doc. 1), and the Commissioner filed the administrative record on September 12, 2016 (Doc. 10). Plaintiff filed a Statement of Specific Errors on October 27, 2016. (Doc. 11). The Commissioner responded on December 15, 2016 (Doc. 13), and Plaintiff replied on December 29, 2017 (Doc. 14).

### B. Relevant Hearing Testimony

At the hearing, Plaintiff testified that he was educated in special education classes and earned a high school degree. (Tr. 284, PAGEID #: 327). Plaintiff obtained a driver's license after having the test read to him. (Tr. 284–85, PAGEID #: 327–28). Plaintiff has prior temporary, part-time work in construction, "hauling boards, putting boards in place," and "carrying heavy stuff." (Tr. 286, PAGEID #329). He also worked temporarily for a tree service and in a factory. (Tr. 294-95, PAGEID #: 337-38).

Plaintiff testified that he resides with his parents (Tr. 285, PAGEID #: 328), where he watches television, prepares some meals, mows grass, and cleans dishes and his room. (Tr. 291–92, PAGEID #: 334–35). Plaintiff walks for exercise twice per week, likes to go hunting and fishing, and sometimes bowls or watches a movie. (Tr. 289, 292–93, PAGEID #: 332, 335–36).

Vocational Expert ("VE") Carl Hartung also testified at the hearing. (Tr. 302, PAGEID #: 345). The examination of the VE is, in relevant part, as follows:

> Q. So, I want you to assume a hypothetical individual with the same age, education, work background as the claimant…. Let's start off with work that's limited to simple, routine, repetitive tasks. Just with those limitations, can you identify any work?
>
> A. Yes, judge, that's for all intent purposes, a full range of unskilled, light work.
>
> Q. And can you give me some representative examples?

A.   … All these jobs have been given an SVP of 2, all of them have been classified at the light level of physical demand. Housekeeping cleaner is applicable to the hypothetical, the DOT code is 32,687-014, in the state there's 4,202, and nationally there's 133,887. I also think that injection mold machine tender is applicable to the hypothetical, the DOT code is 556.685-038, in the state there's 496, and nationally there's 5,684. And I also think usher is applicable to the hypothetical, the DOT code is 344.677-014, in the state there's 105, and nationally there's 4,803.

Q.   Okay. Now, if work is limited to one and two-step task and one and two-step instructions, does that impact your response?

A.   No.

(Tr. 304–305, PAGEID #: 347–48).

### C.   Relevant Medical Background

#### 1.   Dr. Gary S. Sarver

Dr. Gary S. Sarver evaluated Plaintiff on August 24, 2011. (Tr. 903, PAGEID #: 952). Dr. Sarver indicated that Plaintiff has adequate independent living skills, which include cooking, washing dishes, doing laundry, and shopping. (Tr. 908, PAGEID #: 957). He explained that Plaintiff has no history of acting out as a juvenile and gets along reasonably well with his parents, other adults, and friends. (*Id*.). Dr. Sarver described Plaintiff as pleasant, cooperative, interactive, interested, and motivated, and indicated that he "responded appropriately to the demands of the test situation." (*Id*.).

In his functional assessment, Dr. Sarver noted that Plaintiff's "low level of intellectual functioning suggests that he should have no particular difficulty in understanding, remembering, or carrying out simple job instructions." (Tr. 909, PAGEID #: 958). Additionally, Dr. Sarver noted that there were "no indications" of Plaintiff "having difficulty with attentional pace or persistence." (*Id.*). Dr. Sarver expressed that Plaintiff likely would interact well with supervisors and co-workers in a work setting. (Tr. 910, PAGEID #: 959). However, Dr. Sarver

noted that Plaintiff may encounter "some difficulty in adaptively dealing with normative work pressures, and manifest performance anxiety." (*Id*.).

### 2. Dr. Charles Loomis

Dr. Charles Loomis evaluated Plaintiff on April 17, 2013. (Tr. 779, PAGEID #: 827). Dr. Loomis noted that Plaintiff graduated from high school, where he played football, was educated in special services, and "got along acceptably with teachers and fellow students…." (Tr. 780, PAGEID #: 828). Dr. Loomis also stated that Plaintiff received work training in oil field services and "gets along acceptably with his neighbors and the general public." (*Id*.). In terms of activities, Dr. Loomis observed that Plaintiff drives, uses Facebook on the computer, listens to the radio, plays cards, hunts, goes fishing, camps, bowls, and plays golf. (Tr. 781, PAGEID #: 829; Tr. 783, PAGEID #: 831). Dr. Loomis noted that Plaintiff does chores and has meaningful interpersonal relationships. (Tr. 783, PAGEID #: 831). He also noted that Plaintiff's grooming, hygiene, and behavior were appropriate, and he was pleasant, cooperative, had adequate persistence and pace, could maintain eye contact, and had clear, organized, and logical thought processes with no articulation or language problems. (Tr. 781–82, PAGEID #: 829–30).

Consistent with Dr. Sarver's findings, Dr. Loomis found Plaintiff's functional intelligence to be in the borderline range. (Tr. 783, PAGEID #: 831). He determined that Plaintiff has the ability to understand, remember, and carry out routine instructions. (Tr. 784, PAGEID #: 832). Further, Dr. Loomis opined that Plaintiff's "ability to maintain concentration to task appeared to be a relative strength as [his] immediate and delayed memory functions were near [a]verage." (*Id*.). Dr. Loomis also determined that Plaintiff's "[p]ace and persistence were adequate across the examination[,] and he would appear able to perform routine procedures." (*Id*.). Dr. Loomis indicated that Plaintiff could interact appropriately with supervisors and co-

4

workers and his ability to cope with the stress and pressures of competitive work do not appear to be significantly impaired. (*Id*.). Finally, Dr. Loomis opined that Plaintiff's academic and intellectual limitations would likely limit him to unskilled work. (Tr. 784–85, PAGEID #: 832–33).

### 3. State Agency Reviewing Psychologists

The State Agency reviewing psychologists' determinations at the initial and reconsideration levels reflect, *inter alia*, that Plaintiff has moderate difficulties in maintaining concentration, persistence, or pace. (Tr. 344, PAGEID #: 388; Tr. 361, PAGEID #: 405). In the "MRFC—Additional Explanation" section, both psychologists stated that Plaintiff retains the capacity to understand, remember, and carry out one to two-step instructions. (Tr. 348, PAGEID #: 392; Tr. 365, PAGEID #: 409).

### D.     Relevant Portions of the ALJ's Decision

The ALJ issued a decision on November 13, 2014. (Tr. 255, PAGEID #: 298). The ALJ found that Plaintiff had not engaged in substantial gainful activity since February 26, 2013, and suffers from the severe impairments of borderline intellectual functioning and a learning disability, among others. (Tr. 257, PAGEID #: 300). The ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*See* Tr. 260, PAGEID #: 303).

Relevant here, the ALJ examined Plaintiff's mental impairment under Listing 12.05C and found its requirements unsatisfied "because the claimant does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." (Tr. 262, PAGEID #: 305). The ALJ added that the evidence failed to establish that Plaintiff "experiences a

complete inability to function independently outside the area of his home as a result of symptoms and limitations arising from his combined documented impairments" and determined that Plaintiff has adequate adaptive functioning. (*Id.*).

As to Plaintiff's mental residual functional capacity, the ALJ found that Plaintiff "retains the ability to perform simple, routine, repetitive, one and two-step tasks." (Tr. 264–65, PAGEID #: 307–308). Plaintiff was determined to be a younger individual on the date the application was filed (23 years old), and to have a high school education but no past relevant work. (Tr. 269, PAGEID #: 312). Considering Plaintiff's age, education, work experience, and residual functional capacity, the ALJ determined that there are jobs that exist in significant numbers in the national economy that the claimant can perform. (*Id.*). Consequently, the ALJ found that Plaintiff has not been under a disability as defined in the Social Security Act since February 26, 2013, and the ALJ denied benefits. (Tr. 271, PAGEID #: 314).

## II. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)). The Commissioner's findings of fact must also be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). To that end, the Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *Rhodes v. Comm'r of Soc. Sec.*, No. 2:13-cv-1147, 2015 WL 4881574, at *2 (S.D. Ohio Aug. 17, 2015).

## III. DISCUSSION

In his Statement of Specific Errors, Plaintiff argues that the ALJ's decision should be reversed because the formulation of his mental RFC was not supported by substantial evidence. Plaintiff also argues that the ALJ's evaluation of Listing 12.05C relied on an erroneous legal standard.

### A. Mental RFC

Plaintiff's first argument is a relatively narrow one. Plaintiff argues that his mental RFC, which limits him to "simple, routine, repetitive, one and two-step tasks" (Tr. 265, PAGEID #: 308), does not address his deficiencies in concentration, persistence, or pace. (Doc. 11 at 4–7). More specifically, Plaintiff argues that "the RFC only addressed the types of activities that would be possible while staying silent on whether he could actually sustain any of those activities so as to maintain a full-time work regimen." (*Id*. at 6). In support of this position, Plaintiff relies primarily on two decisions from the Eastern District of Michigan, namely *Benton v. Comm'r of Social Security*, 511 F. Supp. 2d 842 (E.D. Mich. 2007) and *Bielat v. Comm'r of Social Security*, 267 F. Supp. 2d 698 (E.D. Mich. 2003). (*Id*. at 5).

In *Benton*, the Court found a hypothetical question posed to a vocational expert inadequate when it limited the plaintiff to simple, repetitive work but failed to address moderate deficiencies in the plaintiff's ability to maintain concentration, persistence, and pace. *Benton*, 511 F. Supp. 2d at 849. Similarly, in *Bielat*, a question posed to a vocational expert was found deficient because it limited the plaintiff to unskilled, low-stress jobs but did not address the plaintiff's deficiencies in concentration, persistence, or pace. *Bielat*, 267 F. Supp. 2d at 702. The questions posed to the vocational experts did not, for example, include speed- or pace-based restrictions, such as an inability to meet quotas. *See generally Benton*, 511 F. Supp. 2d at 849;

7

*Bielat*, 267 F. Supp. 2d at 702; *see also Hanson v. Comm'r of Soc. Sec.*, No. 2:14-cv-561, 2015 WL 1637451, at *5 (S.D. Ohio Apr. 13, 2015) (distinguishing *Benton* and *Bielat* where the ALJ included a limitation prohibiting strict production standards).

In opposition, Defendant states that "Plaintiff does not mention that the ALJ did not only limit him to simple, repetitive tasks as in *Benton* or unskilled or simple work as in *Bielet*, but rather limited Plaintiff to simple, routine, repetitive, one and two-step tasks within the context of unskilled work." (Doc. 13 at 13). Thus, Defendant asserts that Plaintiff's reliance on those decisions is "misplaced." (*Id.*). Without citation to the record or relevant case law, Defendant maintains simply that the ALJ included "other concrete and measurable limitations to account for [Plaintiff's] moderate limits in concentration, persistence, and pace." (*Id.*). Plaintiff disagrees, arguing that there "is no significant difference between *Benton* and *Bielat* and this case" because here the "ALJ produced an MRFC deficient in its failure to speak to the individual's acknowledged impairment regarding sustained capabilities." (Doc. 14 at 2).

"[A] hypothetical limiting a claimant to simple, routine tasks or one- and two-step tasks may, in some instances, fail to capture a claimant's moderate limitation in concentration, persistence, or pace, because the difficulty of a task does not always equate with the difficulty of staying on task." *Schanck v. Comm'r of Soc. Sec.*, No. 12-14837, 2014 WL 1304816, at *7 (E.D. Mich. Mar. 31, 2014). As one court noted, "[t]here is relevant authority ordering remand where an ALJ's hypothetical does not include a specific reference to moderate limitations in concentration or pace and only limits the hypothetical individual to unskilled work or simple, routine tasks," but "there is also authority that has found that an ALJ formed an accurate hypothetical by limiting the claimant to unskilled work or one- or two-step tasks and omitting a moderate concentration or pace limitation." *Id.* (citing cases). Because each case is fact specific,

there is "no bright-line rule requiring remand" if a hypothetical includes "a limitation of 'unskilled work' or 'one- and two-step tasks,' but excludes a moderate limitation in concentration." *Id*. at *8. Rather, this Court is required to "look to the record as a whole" to determine if substantial evidence supports the ALJ's mental RFC. *Id*. (citing *Hess v. Comm'r of Soc. Sec.*, No. 07–13138, 2008 WL 2478325, at *7 (E.D. Mich. June 16, 2008); *Rounds v. Comm'r of Soc. Sec.*, No. 15-12440, 2016 WL 5661594, at *11 (E.D. Mich. Sept. 30, 2016); *see, e.g.*, *Siegel v. Comm'r of Soc. Sec.*, No. 2:15-cv-403, 2015 WL 5245384, at *2–5 (S.D. Ohio Sept. 9, 2015) (rejecting argument that RFC was deficient for failure to incorporate limitations concerning concentration, persistence, or pace, where the ALJ considered all of the relevant evidence and explained the basis for his findings).

In this case, the ALJ considered four opinions concerning Plaintiff's concentration, persistence, or pace. (Tr. 258–60, PAGEID #: 301–303; Tr. 263–64, PAGEID #: 306–307). Dr. Sarver found "no indications" of Plaintiff "having difficulty with attentional pace or persistence" (Tr. 909, PAGEID #: 958), and Dr. Loomis opined that Plaintiff's "ability to maintain concentration to task appeared to be a relative strength . . . ." (Tr. 784, PAGEID #: 832). (*Id*.) (noting that Plaintiff's "immediate and delayed memory functions were near Average"). Dr. Loomis also determined that Plaintiff's "[p]ace and persistence were adequate across the examination[,] and he would appear able to perform routine procedures." (*Id*.). In contrast, the State Agency reviewing psychologists' determinations at the initial and reconsideration levels reflect that Plaintiff has moderate difficulties in maintaining concentration, persistence, or pace. (Tr. 344, PAGEID #: 388; Tr. 361, PAGEID #: 405). In the "MRFC—Additional Explanation" section, both psychologists stated that Plaintiff retains the capacity to understand, remember, and carry out one to two-step instructions. (Tr. 348, PAGEID #: 392; Tr. 365, PAGEID #: 409).

9

The ALJ also considered Plaintiff's statements that he retained sufficient concentration, persistence, or pace to engage in the activities of daily living. (Tr. 263, PAGEID #: 306). The ALJ further noted that Plaintiff "retained sufficient concentration, persistence, or pace" to play football while in school, complete oil field vocational training, and graduate from high school. *Id*.

Given the record evidence, the ALJ posed the following hypothetical to the VE:

> Q. So, I want you to assume a hypothetical individual with the same age, education, work background as the claimant…. Let's start off with work that's limited to simple, routine, repetitive tasks. Just with those limitations, can you identify any work?
>
> A. Yes, judge, that's for all intent purposes, a full range of unskilled, light work.
>
> Q. And can you give me some representative examples?
>
> A. … All these jobs have been given an SVP of 2, all of them have been classified at the light level of physical demand. Housekeeping cleaner is applicable to the hypothetical, the DOT code is 32,687-014, in the state there's 4,202, and nationally there's 133,887. I also think that injection mold machine tender is applicable to the hypothetical, the DOT code is 556.685-038, in the state there's 496, and nationally there's 5,684. And I also think usher is applicable to the hypothetical, the DOT code is 344.677-014, in the state there's 105, and nationally there's 4,803.
>
> Q. Okay. Now, if work is limited to one and two-step task and one and two-step instructions, does that impact your response?
>
> A. No.

(Tr. 304–305, PAGEID #: 347–48). Beyond limiting Plaintiff to simple, routine, repetitive tasks, the hypothetical required that the relevant work involve only one- to two-step instructions. Thus, the ALJ included the limitation added by the State Agency psychologists who opined that Plaintiff has moderate difficulties with concentration, persistence, and pace. (*Compare* Tr. 348, PAGEID #: 392; Tr. 365, PAGEID #: 409 *with* Tr. 304–305, PAGEID #: 347–48). The ALJ

included the same restriction in his mental RFC finding limiting Plaintiff to "simple, routine, repetitive, one and two-step tasks." (Tr. 265, PAGEID #: 308).

Although the Court is aware that the difficulty of a task does not always equate with the difficulty of staying on task, the ALJ properly considered all record evidence concerning both inquiries. *See, e.g.*, *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 436–37 (6th Cir. Sept. 8, 2014) ("Although it may not always be true that a RFC or hypothetical limiting the claimant to simple, routine, repetitive tasks and avoiding contact with the general public will account for each of the above factors, the manner in which the limitations arose in the case and their substantial overlap with one another as reflected in the opinions of the professionals substantially support the ALJ's RFC and hypothetical."). Because there is no record evidence to support any additional limitation concerning Plaintiff's concentration, persistence, and pace, the hypothetical accurately portrayed Plaintiff's mental impairments. *Hatfield v. Comm'r of Soc. Sec.*, No. 1:14-cv-851, 2016 WL 225674, at *8–9 (S.D. Ohio Jan. 1, 2016) (finding that ALJ fashioned an RFC and hypothetical that accounted for moderate concentration, persistence, or pace limitations where the plaintiff failed to produce any evidence to support specific pace-based restrictions); *Jackson v. Comm'r of Soc. Sec.*, No. 1:10-cv-763, 2011 WL 4943966, at *4 (N.D. Ohio Oct. 18, 2011) (finding substantial evidence supported ALJ's decision where the plaintiff referred "to no record evidence to suggest that she had any greater limitations than those identified by the ALJ"); *see also Lewicki v. Comm'r of Soc. Sec.,* No. 09–11844, 2010 WL 3905375, at *3 (E.D. Mich. Sept. 30, 2010) (upholding the ALJ's hypothetical where the plaintiff did not explain why the particular facts of the case required a more detailed hypothetical to account for his moderate limitations in concentration, persistence, or pace). Under these circumstances, substantial evidence supports the ALJ's mental RFC, and the Court finds

Plaintiff's first statement of error to be without merit. *See Kline v. Astrue*, No. 1:12-cv-1802, 2013 WL 1947164, at *4–5 (N.D. Ohio Apr. 17, 2013).

B.  **Listing 12.05C**

In the second assignment of error, Plaintiff argues that the ALJ "improperly relied upon a wildly disparate legal standard from that enunciated in Listing 12.05C" when deciding he failed to meet that listing. (Doc. 14 at 3). Listing 12.05C for Intellectual Disability requires proof of a "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period: *i.e.,* the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05. Relevant here, a plaintiff is able to establish listing-level severity with "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Id.* § 12.05(C).

Listing 12.05C refers to "deficits in adaptive functioning" but does not define that phrase. *See generally* 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05; *Gethin v. Colvin*, No. 3:14-cv-53-DW, 2014 WL 4104130, at *10 (W.D. Ky. Aug. 19, 2014) ("Nowhere in the paragraph is it specified how severe such limitations must be to so qualify"). According to the Diagnostic and Statistical Manual of Mental Disorders, "[a]daptive functioning involves how effectively an individual copes with common life demands and meets standards of personal independence in areas such as communication, self-care, and social skills." *Sexton v. Comm'r of Soc. Sec.*, No. 1:14-cv-535, 2015 WL 2169650, at *4, n.7 (S.D. Ohio May 8, 2015) (citing at 40 (4th ed. 2000)). Further, "case law from the Sixth Circuit and other federal courts suggest that a claimant must have relatively significant deficits to satisfy [Listing 12.05]." *Gethin*, 2014 WL 4104130, at *10

(citing *Robinson v. Comm'r of Soc. Sec.*, No. 2:13-cv-530, 2014 WL 3419309 at *8 (S.D. Ohio July 10, 2014) (internal quotations omitted)).

In this case, the ALJ stated that:

> The claimant's mental impairment has been considered under the requirements of listing 12.05. An intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functionally initially manifested during the development period *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.

(Tr. 261, PAGEID #: 304). However, the ALJ found the requirements in paragraph C:

> are not met because the claimant does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. In this regard, the evidence fails to establish that the claimant experiences a complete inability to function independently outside the area of his home as a result of symptoms and limitations arising from his combined documented impairments. In fact, the evidence demonstrates the claimant has adequate adaptive functioning as discussed in further detail below.

(Tr. 262, PAGEID #: 305). Plaintiff's statement of error arises from the ALJ's reference to "a complete inability to function independently outside the area of his home," which he contends is "wholly novel language." (Doc. 11 at 8). Defendant concedes that the ALJ used language that is not part of Listing 12.05 but claims the error is harmless because Plaintiff failed to establish that he meets or equals the listing criteria. (Doc. 13 at 5). This Court agrees with Defendant.

Stated simply, the ALJ conducted a detailed review of the psychological evidence which revealed that Plaintiff does not have adaptive functioning deficits that satisfied Listing 12.05C's requirements. (Tr. 262, PAGEID #: 305). The ALJ examined the opinions of Dr. Sarver and Dr. Loomis which concerned Plaintiff's ability to cope with common life demands and meet standards of personal independence. (*See, e.g.*, Tr. 258–59, PAGEID #: 301–302, Tr. 259–60, PAGEID #: 302–303). For example, the ALJ cited evidence that Plaintiff graduated high school in special services, where he played football, completed oil field vocational training, and got

13

along with his teachers and peers; he had two periods of employment, during which he got along with supervisors and coworkers and suffered no discipline; he does household chores, drives, runs errands, goes to restaurants and movies, visits with family and friends, uses a computer, plays video games, manages his Facebook page, listens to the radio, plays cards, hunts, fishes, camps, bowls, and golfs. (Tr. 259, PAGEID #: 302) (citing Tr. 779–85, PAGEID #: 827–33); Tr. 258, PAGEID #: 301 (citing Tr. 903–10)). Among other evidence, the ALJ cited examination results reflecting that Plaintiff's grooming, hygiene, and behavior were appropriate; he was pleasant, cooperative, had adequate persistence and pace, could maintain eye contact, and had clear, organized, and logical thought processes with no articulation or language problems. (*Id.*).

The ALJ noted that Plaintiff was assessed as having borderline intelligence, but cited the observations of Dr. Sarver and Dr. Loomis that Plaintiff has no impairment in his ability to understand, remember, and carry out simple instructions; no impairment in his ability to maintain attention, concentration, persistence, and pace for simple and multistep tasks; and no impairment in his ability to respond appropriately to supervisors and coworkers in the work setting. (*Id.*). Further, the ALJ noted that Dr. Sarver found Plaintiff would have some impairment in his ability to respond appropriately to work pressures in a work setting but Dr. Loomis found none. (*Id.*). The ALJ also relied on the reports of the state agency psychologists, who both examined all of the relevant evidence and determined that Plaintiff did not satisfy the criteria of Listing 12.05 (Tr. 343–44, PAGEID #: 388–89; Tr. 359–61, PAGEID #: 403–405), and Plaintiff's self-reported activities of daily living and social functioning. (Tr. 262–63, PAGEID #: 305–306). Based on the foregoing, the ALJ concluded Plaintiff had adequate adaptive functioning and did not meet or equal Listing 12.05C.

Plaintiff urges this Court to refrain from examining the relevant evidence because the ALJ is "the only person properly situated to decide whether the evidence of record satisfied the requirements of the listing." (Doc. 14 at 3). To the contrary, relevant law requires an examination of the record evidence to determine whether an ALJ's error is harmless. *See, e.g.*, *Alcorn v. Astrue*, No. 5:07-212-DCR, 2008 WL 1790192, at *5 (E.D. Ky. Apr. 18, 2008) (finding ALJ's failure to address Listing12.05C was harmless error where the evidence demonstrated the plaintiff did not satisfy the listing requirements). Indeed, it is this Court's obligation to determine if "all of the circumstances taken together constitute substantial evidence" to support the ALJ's determination that Plaintiff failed to meet or equal the requirements of Listing 12.05C. *Genthin v. Colvin*, No. 3:14-cv-53, 2014 WL 4104130, at *11 (W.D. Ky. Aug. 19, 2014) (finding the record evidence did not support the plaintiff's arguments that his nonexertional impairments were sufficiently severe to satisfy Listing 12.05C).

Here, the ALJ relied properly on evidence from two consultative psychological examining physicians, Plaintiff's self-reported daily living activities and social functioning, and the opinions of the state agency reviewing psychologists. Thus, the ALJ's finding at step three finding that Plaintiff did not meet or equal the criteria of Listing 12.05C is supported by substantial evidence. Although the ALJ erred in remarking on the lack of "a complete inability to function independently outside the area of [the] home," the error is harmless because Plaintiff failed to establish that he meets or equals the listing criteria. Based on the foregoing, Plaintiff's second statement of error is likewise without merit.

## IV. CONCLUSION

For the reasons stated, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

**Procedure on Objections**

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1). Failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140, 152–53 (1985).

IT IS SO ORDERED.


Date: June 7, 2017                                    /s/ Kimberly A. Jolson
                                                      KIMBERLY A. JOLSON
                                                      UNITED STATES MAGISTRATE JUDGE